Janet Rosen, Appellant *v.* Montgomery County Intermediate Unit No. 23, Appellee.

Phoebe Baxter, Appellant *v.* Montgomery County Intermediate Unit No. 23, Appellee.

Argued April 11, 1985, before Judges CRAIG and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Steven A. Rosen, Jokelson and Rosen,* for appellants.

*Philip Salkin, Pearlstine, Salkin, Hardiman and Robinson,* for appellee.

OPINION BY JUDGE CRAIG, July 9, 1985:

In these two consolidated cases, Janet Rosen and Phoebe Baxter appeal the orders of the Court of Common Pleas of Montgomery County which dismissed their petitions for review of adjudications by the Montgomery County Intermediate Unit Board of

School Directors upholding the suspensions of Rosen and Baxter from their tenured teaching positions in the gifted program at Montgomery County Intermediate Unit No. 23 (I.U.).

We must determine[1] whether either the board or the common pleas court correctly concluded, albeit for different reasons, that the suspensions were valid under the Public School Code of 1949.[2]

Because of changes in government funding procedures for intermediate units, the board determined that it would be more effective economically to turn back some of the programs conducted at the I.U. to the individual participating school districts.[3] Consequently, the board adopted a resolution transferring the gifted program, among others, back to the individual school districts, and suspending some professional employees, including Rosen and Baxter, who challenged the validity of their suspensions at hearings before the board.

The suspension of a tenured professional public school employee is valid only if it conforms with the requirements of section 1124 of the Code, which provides:

> Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

---

[1] Where, as here, the common pleas court has taken no additional evidence, our scope of review is limited to a determination of whether the local agency abused its discretion, committed an error of law, or violated the employee's constitutional rights, and whether the local agency's findings of fact are supported by substantial evidence. *Acitelli v. Westmont Hilltop School District*, 15 Pa. Commonwealth Ct. 214, 325 A.2d 490 (1974).

[2] The Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 through 27-2702.

[3] Under section 1372(3) of the Code, 24 P.S. §13-1372(3), the individual school districts are primarily responsible for providing special education programs.

(1) Substantial *decrease in public enroll-ment* in the school district;

(2) *Curtailment or alteration of the educational program* on recommendation of the superintendent, concurred in by the board of school directors, *approved by the Department of Public Instruction,* as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

(3) Consolidation of schools . . . . ;

(4) When new school districts are established as the result of reorganization of school districts . . . . (Emphasis added.)

See, e.g., *Fatscher v. Board of School Directors,* 28 Pa. Commonwealth Ct. 170, 367 A.2d 1130 (1977).

Clearly, only the causes under (1) and (2), above, can be involved here; there has been no consolidation to invoke (3) nor reorganization to make (4) applicable.

The board found that funding problems prompted the transfer of the gifted program back to the school districts, resulting in a decline in enrollment at the I.U. The board therefore upheld the suspensions of Rosen and Baxter "due to a decline in enrollment" which is the permissible basis for suspension under section 1124(1) of the Code, 24 P.S. §11-1124(1).

On appeal from that decision, however, the common pleas court instead held that the suspensions were proper under section 1124(2) of the Code, 24 P.S. §11-1124(2). The court concluded that the board had obtained the necessary approvals specified in that section, and that the transfer of the gifted program was done "to conform with standards of organization or educational activities required by law. . . ." Having

found an alternative ground for validating the suspensions,[4] the common pleas court did not consider the correctness of the board's finding of declining enrollment and conclusion that Rosen and Baxter's suspensions were valid under section 1124(1) of the Code, 24 P.S. §11-1124(1).

The common pleas court concluded that this case is indistinguishable from *Cadonic v. Northern Area Special Purpose Schools,* 57 Pa. Commonwealth Ct. 42, 426 A.2d 186 (1981), where a decrease in federal funding for a guidance counsellor program at a joint vocational-technical unit necessitated the elimination of the centralized program in favor of individual programs by participating school districts. In *Cadonic,* this court concluded that the elimination of the guidance counsellor program did not result from a decline in enrollment under section 1124(1) of the Code, 24 P.S. §11-1124(1), but that the program was eliminated "to conform with the standards of organization and educational activities required by law" under section 1124(2) of the Code, 24 P.S. §11-1124(2). Relying on *Sporie v. Eastern Westmoreland Area Vocational-Technical School,* 47 Pa. Commonwealth Ct. 390, 408 A.2d 888 (1979), we held that, by virtue of section 1106 of the Code, 24 P.S. §11-1106, which authorizes the school board to hire only necessary teachers, the elimination of the guidance program and suspension of the counsellors was "required by law."

*Cadonic* is distinguishable, however, in one important respect. There the board did obtain all the approvals necessary for a valid suspension under sec-

---

[4] Where an administrative agency assigns an erroneous reason to a correct decision, but the record reflects the correct basis for that decision, a court should affirm the agency's decision. *Haney v. Workmen's Compensation Appeal Board,* 65 Pa. Commonwealth Ct. 461, 442 A.2d 1223 (1982).

tion 1124(2), including approval from the Department
of Education (formerly the Department of Public In-
struction).

Contrary to the view expressed by the common
pleas court as to departmental approval, our review
of the record does not disclose any evidence that the
Department of Education approved the "alteration of
the educational program," *i.e.*, the transfer of the
gifted program. Record evidence includes correspon-
dence between the department and the board, docu-
menting that the department advised the board that
suspensions pursuant to section 1124(1) of the Code,
24 P.S. §11-1124(1), for declining enrollment do not
require departmental approval. The letter's content,
insofar as it expresses the departmental action, reads:

> Section 1124(1) of the Public School Code of
> 1949, as amended, gives local boards the au-
> thority to suspend professional staff without de-
> partment approval. This authority is granted
> to local boards based on a substantial decline
> in districtwide enrollments. In reviewing your
> letter, it appears the Montgomery County In-
> termediate Unit action is predicated on a sub-
> stantial decline in districtwide enrollment.

That letter does not establish that the Department
of Education approved the program "alteration" or
"[c]urtailment" as required by section 1124(2) of the
Code, 24 P.S. §11-1124(2), nor that the department
recommended it.

Although we conclude, contrary to the common
pleas court, that the board did not meet the require-
ments of section 1124(2) of the Code, 24 P.S. §11-
1124(2), that subsection, and not section 1124(1), up-
on which the board relied, is the only appropriate
basis for a valid suspension in this case. In *Cadonic*,
this court consistently held, in a factually similar set-

ting, that a suspension stemming from the elimination of an educational program due to a change in funding procedures was not a result of declining enrollment. In cases like this one, school boards may not avoid the requirement of section 1124(2) for approval from the Department of Education by characterizing a suspension as necessitated by declining enrollment when it was actually precipitated by an economically motivated curriculum reorganization. The analysis illustrated by *Cadonic* does not permit acceptance of the board's attempt to place this case under section 1124(1) by contending that there was an I.U. enrollment decline as a consequence of the willingness of the school districts to take back the programs.

Hence, section 1124(1) of the Code, 24 P.S. §11-1124(1) was not an appropriate basis for the suspensions of Rosen and Baxter, and, in view of the absence of the required departmental approval, section 1124(2) also provided no warrant for those suspensions.

Accordingly, we reverse.

ORDER IN 165 C.D. 1984

The order of the Court of Common Pleas of Montgomery County, at Civil Action-Law, No. 82-11012, is reversed and remanded, for reinstatement of appellant to the position previously held, and for computation and payment to appellant of back pay and benefits accruing from the date of suspension, less the amount of appellant's earnings from other sources during that period.

ORDER IN 166 C.D. 1984

The order of the Court of Common Pleas of Montgomery County, at Civil Action-Law, No. 82-11241, is reversed and remanded, for reinstatement of appellant to the position previously held, and for computa-

342

tion and payment to appellant of back pay and bene-
fits accruing from the date of suspension, less the
amount of appellant's earnings from other sources
during that period.